IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMPLIFY CAR WASH ADVISORS LLC,<br><br>Plaintiff,<br>v.<br><br>CAR WASH ADVISORY LLC and HARRY CARUSO,<br><br>Defendants. | Case No. 22-cv-5612<br><br>Judge John G. Koeltl<br><br>Magistrate Judge Ona T. Wang |

**PLAINTIFF AMPLIFY CAR WASH ADVISORS LLC'S MOTIONS IN LIMINE**

## Table of Contents

I. Introduction ........................................................................................................................... 1

II. Applicable Rules of Evidence that Preclude Introduction of Defendants' Exhibits ........... 1

III. This Court Should Preclude Defendants' Exhibits ............................................................. 1

    A. MIL #1 - Plaintiff's USPTO Application Is Irrelevant and Hearsay. ...................... 1

    B. MIL #2 - Defendants' Internet Printouts and Related Testimony Are Unauthenticated Hearsay ................................................................................. 3

    C. MIL #3 - Defendants' Affidavits and Third-Party Witnesses Should Be Excluded 6

IV. MIL #4 - Defendants Should Be Precluded from Advancing Its Alleged Affirmative Defenses .......................................................................................................................... 10

V. Conclusion ....................................................................................................................... 11

# Table of Authorities

**Cases**

*City of New York v. Blue Rage, Inc.*,
    435 F.Supp.3d 472 (E.D.N.Y. 2020) .................................................................................. 2

*DVL, Inc. v. Gen. Elec. Co.*,
    811 F.Supp.2d 579 (N.D.N.Y. 2010) ................................................................................. 7

*Ellington v. Gibson Piano Ventures, Inc.*,
    No. 103CV0804WTLDFH, 2005 WL 1661729 (S.D. Ind. June 24, 2005) .......................... 3

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*,
    897 F.3d 413 (2d Cir. 2018) ............................................................................................... 2

*Iancu v. Brunetti*,
    588 U.S. 388 (2019) ........................................................................................................... 2

*In Re McGinley*,
    660 F.2d 481 (CCPA 1981) ............................................................................................... 2

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*,
    687 F.Supp. 754 (E.D.N.Y. 1988) ..................................................................................... 2

*Patsy's Italian Rest., Inc. v. Banas*,
    575 F.Supp.2d 427 (E.D.N.Y. 2008) ................................................................................. 2

*Platt v. Michaan*,
    695 F.Supp.3d 420 (S.D.N.Y. 2023) ................................................................................. 3

*Prometheus Lab'ys Inc. v. Roxane Lab'ys, Inc.*,
    No. CV 11-1241 (FSH), 2014 WL 12607728 (D.N.J. May 21, 2014) ............................... 3

*RGB Plastic, LLC v. First Pack, LLC*,
    184 F.Supp.3d 649 (N.D. Ill. 2016) ................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 37 ..................................................................................................................... 7

FRE 803(8) ............................................................................................................................... 3

I.   Introduction

The Parties filed their pretrial disclosures on April 16, 2025. Dkt. 92. The disclosures included each party's respective identification of proposed exhibits for trial. Dkt. 92-4. Among Defendants' exhibits are United States Patent and Trademark Office documents pertaining to Plaintiff's application for federal registration of its trademark (Defendant's Exhibit No. "DEF_A"), a pair of internet printouts (DEF_B, DEF_C), and a collection of "client affidavits" (DEF_D). This Court should bar each of these proposed exhibits. This Court should further bar testimony of witnesses not disclosed on Defendant's Rule 26(a) Disclosures. Finally, this Court should preclude Defendants from asserting any affirmative defenses at trial.

II.   Applicable Rules of Evidence that Preclude Introduction of Defendants' Exhibits

Amplifies motions *in limine* are each based on one or more Federal Rule of Civil Procedure 26(a), 26(e), and 37(c) and Federal Rules of Evidence 401, 402, 403, 602, 801, 802, 900, and 1006.

III.   This Court Should Preclude Defendants' Exhibits

   A.   MIL #1 - Plaintiff's USPTO Application Is Irrelevant and Hearsay.

Plaintiff's Complaint asserts claims of cybersquatting (based on Plaintiff's common law trademark rights) and common law trademark infringement. *See*, Dkt. 3, Count I, Count II. This Court has already ruled as a matter of law that Defendants are jointly and severally liable for violating Plaintiff's common law trademark rights in AMPLIFY and AMPLIFY CAR WASH ADVISORS and for cybersquatting with respect to Defendants' use of the domain www.carwashadvisory.com. Dkt. 89. Indeed, the parties stipulated to the protection of Plaintiff's common law trademarks and those findings. Dkt. 106, ¶¶ 16, 17, 21, 27. Plaintiff has not asserted any claim based on any federal trademark registration.

Defendants seek to introduce documents from the USPTO respecting Plaintiff's application for federal registration of one of its trademarks. Dkt. 92-4, DEF_A. These documents should be excluded under Federal Rules of Evidence 401, 402, and 403, as they are not relevant and their introduction would be unduly prejudicial and a waste of time. The documents should further be excluded under Federal Rule of Evidence 801, and 802 as they are hearsay being offered for the truth of the matter asserted therein, and no exception applies.

Trademark protection is acquired through use, not any legal classification at the USPTO or otherwise. *Patsy's Italian Rest., Inc. v. Banas*, 575 F.Supp.2d 427, 446 (E.D.N.Y. 2008). Whether the application was rejected during the registration process is irrelevant. A rejection within the USPTO does not affect a party's common law trademark rights. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 687 F.Supp. 754, 759 (E.D.N.Y. 1988). "Trademark rights at common law derive from initial appropriation and use…." *City of New York v. Blue Rage, Inc.*, 435 F.Supp.3d 472, 486 (E.D.N.Y. 2020) (cleaned up). "[R]egistration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark." *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). Indeed, "[r]egistration of a mark is not mandatory. The owner of an unregistered mark may still use it in commerce and enforce it against infringers." *Iancu v. Brunetti*, 588 U.S. 388, 391 (2019); *see also In Re McGinley,* 660 F.2d 481, 484 (CCPA 1981) (A refusal by the PTO to register a mark does not preclude the owner of the mark from his right to use it.).

Plaintiff has rights in AMPLIFY, AMPLIFY CAR WASH ADVISORS, and its logo because it has used those marks continuously in commerce since at least 2019. This Court confirmed Plaintiff's common law rights. Dkt. 89, p. 8. The issue at trial is not whether Defendants infringed those rights. That has already been found. All that is at issue with respect

2

to trademark infringement is damages. Damages do not depend on—and are not affected by—federal registration. *See* 15 U.S.C. § 1117. Plaintiff is entitled to recover actual damages and disgorgement damages under § 1117 regardless of registration.

Furthermore, Defendants seek to rely on the statements and conclusions of the Examiner for the truth of the matter asserted (i.e., the existence of confusion with other marks), but that is inadmissible hearsay. *Platt v. Michaan*, 695 F.Supp.3d 420, 439 (S.D.N.Y. 2023); *see also RGB Plastic, LLC v. First Pack, LLC*, 184 F.Supp.3d 649, 663 (N.D. Ill. 2016) ("[T]he PTO examiner's out-of-court statement is hearsay").[1] The Examiner's conclusions are also irrelevant. "[T]he initial rejections by the USPTO's trademark examining attorneys are not evidence of a likelihood of confusion." *Ellington v. Gibson Piano Ventures, Inc.*, No. 103CV0804WTLDFH, 2005 WL 1661729, at *6 (S.D. Ind. June 24, 2005) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220 (3rd Cir. 2000)) (An examiner's determination "need not be given weight" by a district court.). Accordingly, the Court should bar Defendants' introduction of (and any argument concerning) Plaintiff's USPTO trademark application.

### B. MIL #2 - Defendants' Internet Printouts and Related Testimony Are Unauthenticated Hearsay

Defendants seek to introduce a number of third-party website printouts for the purpose of arguing the scope of internet traffic to the infringing domain. See Dkt. 92-4, DEF-B, DEF_C. These documents are unauthenticated hearsay, and Defendants have no witness with personal

---

[1] While the existence of the Office Action may not be hearsay (for example if there were a dispute as to whether the application had been subject to a rejection), see FRE 803(8), the underlying statements of the Examiner on which Defendants seek to rely is hearsay because the Examiner's opinion is being offered as truth. *See* FRE 801(c); *see also Prometheus Lab'ys Inc. v. Roxane Lab'ys, Inc.*, No. CV 11-1241 (FSH), 2014 WL 12607728, at *21 n 25 (D.N.J. May 21, 2014) ("Statements by a patent examiner's supervisor in an *ex parte* proceeding with no ability for the adversary to cross examine or otherwise be heard, are also hearsay….").

knowledge of how the documents were created to provide testimony on the topic.  Additionally, the documents purportedly aggregate data and present it as a summary of the aggregate.  Here, the underlying data was never produced, and thus any summary of it is inadmissible.

Defendants' proposed Exhibit DEF_B is purportedly a "Google Analytics" printout. First, the document is irrelevant.  This Court ruled that Defendants are liable for infringement. The issue for trial is damages. The Google Analytics document does not make damages more or less likely and Defendants have no affirmative defense concerning damages that could be impacted by the document.

Second, Exhibit DEF_B it is an out of court statement offered for the truth of the matter asserted (i.e. that the data reported in the exhibit is true and accurate).  That is hearsay.  Fed. R. Evid. 801.  There is no exception that could apply.

Third, the document cannot be authenticated.  Under Federal Rule of Evidence 901, to authenticate a document, the proponent must present a witness with knowledge that can testify that the document is what it purports to be.  This dovetails with Federal Rule of Evidence 602 which restricts a witness to testifying only as to subject matter where there is evidence sufficient to show that the witness has personal knowledge of it.  Defendants provide no such witness. None of Defendants' witnesses were responsible for gathering, compiling, and presenting the underlying data in the form shown in the exhibit.  The fact that Mr. Caruso (or perhaps someone acting on his behalf) gathered the exhibit from the internet does not give Defendants the requisite knowledge for authenticating the underlying data on which Defendants intend to rely.

Alternatively, because it appears to be a data compilation, Defendants might seek to introduce it under FRE 901(b)(8), but that fails too.  The document is certainly suspicious.  It

4

supposedly came from a website, but there is no URL associated with it. The document is also less than 20 years old. Therefore, it fails to satisfy the requirements of FRE 901(b)(8).

Finally, the document is an improper summary. The exhibit is purportedly a collection of data scraped from somewhere that supposedly shows visits to websites. However, the underlying data that was used to prepare the exhibit was never produced in discovery. Under Federal Rule of Evidence 1006, had Defendants wanted to introduce such a summary, they were required to produce the underlying data from which the summary was prepared. Furthermore, any summary must be based on foundational testimony, and Defendants have no foundation for how the data summarized in the document was collected or processed. *See Fagiola v. Nat'l Gypsum Co. AC & S.*, 906 F.2d 53, 57 (2d Cir. 1990). Having failed to produce the underlying data and having no foundation for testifying about the document, the exhibit must be excluded.

Defendant's Exhibit DEF_C is similar and should be barred. It is purportedly a printout from third-party website www.semrush.com. Once again, infringement has already been found. Thus, the exhibit is not relevant. Moreover, Defendants seek to introduce it for the truth of whatever it purports to report. Defendants have not identified any witness with personal knowledge of how www.semrush.com supposedly created the document nor have Defendants identified or produce the underlying data that was used to make the document. There is also no witness with knowledge of the process or algorithms used by www.semrush.com to create such a document. The underlying data utilized to prepare the document was never produced, and Defendants have no foundation for testifying about it either. For at least these reasons, the document is irrelevant, unauthenticated hearsay for which no exception applies. It would be unfairly prejudicial and a waste of time for the document to be introduced at trial.

Accordingly, both DEF_B and DEF_C should be excluded, and Defendants should be barred from providing any testimony related to either.

As to the latter point, on summary judgment, Caruso provide a declaration in which he stated that he performed "search traffic and page traffic audits" using search engine optimization service providers. Dkt. 79, ¶10-11. Caruso parlays such alleged "audits" into testimony that Defendants' infringing amplifycarwash.com domain did not have any traffic. However, Caruso has no personal knowledge of the website traffic. By his own declaration, his "knowledge" is based purely on hearsay from internet searches he claims to have performed at some point. Plaintiff anticipates that Defendants will attempt to introduce similar testimony at trial. However, under Federal Rule of Evidence 602, a witness must have personal knowledge of the matter to which the witness is testifying. Caruso does not have personal knowledge of anything he allegedly found through search engine optimization website research. He has no foundation for how the websites supposedly performed any processing that resulted in whatever data Caruso seeks to introduce as evidence of the use of the infringing domains. Just as Exhibits DEF_B and DEF_C should be excluded, so should any testimony by Caruso on purported "audits", Google Analytics, or search engine optimization website usage reports.

### C. MIL #3 - Defendants' Affidavits and Third-Party Witnesses Should Be Excluded

Defendants' exhibit DEF_D is a collection of affidavits. All should be excluded at trial. So too, this Court should bar Defendant from introducing Jeff Bankey and Ed Goff as witnesses at trial. Neither were properly disclosed, and neither can provide any relevant testimony. Additionally, Defendant's made false representations to this Court causing Plaintiff to expend precious pretrial time and energy to quickly depose each person and, in the process, uncover

Defendants' deception. At least because each person is irrelevant, and separately as a sanction, DEF_D and those witnesses should be excluded.

Rule 26(a) and (e) require that a party fully disclose all witnesses that may have relevant information respecting any claim or defense. "Under Federal Rule of Civil Procedure 37(c), '[i]f a party fails to ... identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *DVL, Inc. v. Gen. Elec. Co.*, 811 F.Supp.2d 579, 588 (N.D.N.Y. 2010) (quoting Fed. R. Civ. P. 37). That rule is straight forward.

In this case, discovery was set to close on October 11, 2023, and the parties had a hearing at 1:00pm that day. Dkt. 59. The day of the hearing, Defendants sent Plaintiff nine affidavits from people that they had never identified as witnesses. Ex. 1. Defendants' counsel then emailed the court informing the court it was stuck in an airport in North Carolina, and would not be able to make the hearing. Ex. 2. The Court reset the hearing for October 31, 2023. Dkt. 61. By that time, discovery had closed. Plaintiff raised the late produced affidavits at the hearing and the burden on Plaintiff to have to reopen discovery to depose them. Ex. 3, p. 11-12. The Court did not allow for further depositions of those individuals and stated, "I'm not foreclosing any request for relief related to that because this does seem like something that if it happened earlier and during the earlier time when discovery was active and wide open, you know, I would have allowed subpoenas to go out. Now, I'm really trying to corral the discovery and get it closed up so that we can move on to the next stage." Ex. 3, 14:2-9. Thus, the Court denied Plaintiff discovery on the affidavits, and the parties moved on to the summary judgment stage.

Despite that, Defendants listed Blakey and Goff on their pretrial disclosures and stated that each "will testify consistently with his affidavit…." Dkt. 92. At the pretrial hearing,

Plaintiff again objected to the late identification of such witnesses and again pointed out that Defendants still had never identified either on any Rule 26(a) disclosure. Ex. 4, 18:7-9; Ex. 5. In response, Defendant argued that there were discussions about investigating "the signers of those affidavits" but that Plaintiff "didn't make [any] further application [for discovery] one way or the other regarding the signers of the affidavits." Ex. 4, 19:7-21. While the Court had previously barred Plaintiff from conducting discovery in October of 2023, at the pretrial conference Magistrate Judge Wang ordered that Plaintiff would have a week to take each person's deposition. Dkt. 96. Magistrate Judge Wang then stated that preclusion of the witnesses could be raised with Judge Koeltl "but I don't think they should be precluded, because plaintiff has been on notice of these individuals for a year and a half now." Ex. 4, 23:3-8. Defendants remained silent in response to Magistrate Judge Wang's statement.

On May 2, 2025 Plaintiff took Blakey's deposition and attempted to uncover the scope of the affidavit Defendants represented he would testify about at trial. After what amounts to pages of questioning on the transcript, Defendants came clean and admitted that **<u>Mr. Blakey never provided an affidavit in the litigation</u>**. Counsel for Defendants interrupted the questioning and stated:

> "Ordinarily I wouldn't interject at this point but I should let you know that in a paragraph in joint trial order [Dkt. 92] the reference to an affidavit is my error so Mr. Bankey did not sign an affidavit."

Ex. 6, 28:23-29:5. This was no harmless "error." It lies at the heart of Plaintiff's objections. It directly contradicts Magistrate Judge Wang's belief and comment that Plaintiff had notice for a year and half. Plaintiff had no notice of Blakey. Defendants tried to sneak in witness affidavits on the final day of discovery, did not even identify everyone that they might call as witnesses, tried to sneak in a totally new person in the pretrial order, and let the Court admonish Plaintiff for not demanding the reopening of discovery. That caused Plaintiff the added burden of having

8

to depose the witness and discover the misrepresentations. Preventing such surprises and burdens are precisely the reason for Rule 26(a) and why Rule 37 bars introduction of undisclosed witnesses.

The depositions further revealed that neither Blakey nor Goff have any relevant testimony. Both confirmed that they were first introduced to Defendants well prior to Defendants launching their infringing campaign in November of 2022. Thus, it is entirely irrelevant that those individuals did not meet Defendants through the infringing website. They couldn't have because Caruso had not even bought it at the time they met. It would be wholly improper to elicit such testimony at trial, as the only purpose for doing so would be for Defendants to try and artificially boot strap those people's lack of knowledge about a website that did not exist into an argument that other people—who are not testifying—did not use the website during the infringing period.

Their testimony cannot be related to liability; liability is already established. It cannot be related to damages; their transactions do not form the basis for Plaintiff's damages. Rather, their transactions are merely relevant to show the state of Defendants' business prior to the infringing period. The testimony of Blakey and Goff is irrelevant and unduly prejudicial as it is likely to mislead and deceive the jury.

The rest of the affidavits should also be precluded either as a sanction in connection with the arguments raised above, or at least because there is no witness to cross-examine at trial. The need for a witness to be present is a foundational principle of the trial system. For decades the courts have consistently focused on and criticized the use of an affidavit in place of live testimony due to the importance of the jury observing witness demeanor and subjecting the witness to cross-examination. See *Colby v. Klune*, 178 F.2d 872, 874 (1949); *R-T Leasing Corp.*

*v. Ethyl Corp.*, 494 F.Supp. 1128, 1137 (1980); *Harig v. City of Buffalo*, 574 F.Supp.3d 163 (2021). Excepting Goff, which Plaintiff dealt with above, none of the individuals who provided the affidavits of DEF_D provided deposition testimony and ***none*** are listed as witnesses at trial. Consequently, the affidavits are all hearsay. There is no witness with personal knowledge to provide testimony consistent with the affidavits, and all should be excluded.

Additionally, it should be made clear that Defendants are also barred from referencing the existence of the affidavits or the substance of those affidavits at trial. Such testimony about the affidavits would be hearsay and simply an attempted end-around any order by this Court striking the affidavits.

**IV.     MIL #4 - Defendants Should Be Precluded from Advancing Its Alleged Affirmative Defenses**

In the parties pretrial order, Defendant maintained that it was asserting the following "affirmative defenses": 1) damages are entirely speculative; 2) Plaintiff's claims should be denied or reduced as its use of the name "Car Wash Advisors" puts it in direct competition with Defendants and would be the sole cause, if any, of confusion; 3) no act or omission by Defendant(s) has caused any damage to Plaintiff; 4) Defendants owed no duty to Plaintiff and have breached no duty to Plaintiff. None of the foregoing is an affirmative defense.

"An affirmative defense is a defense that will defeat the plaintiff's claim, even if all allegations in the complaint are true, rather than an attack on the truth of the allegations, or a rebuttal of a necessary element of the claim." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (internal quotation marks, citation, and alterations omitted).

Plaintiff's first "speculative damages" and third "Defendants did not cause damage" assertions do not excuse Defendant's liability for trademark infringement or cybersquatting. Indeed, damages is not an element of either claim, and cybersquatting specifically provides for

statutory damages. See 15 U.S.C. §§ 1125(a), 1125(d), 1117(a), 1117(d). Thus, Defendant should be precluded from arguing "damages are speculative" to counter its liability.

Defendant's second "denial or reduction" assertion is also not a proper affirmative defense. This Court has already found Plaintiff has trademark rights in AMPLIFY and AMPLIFY CAR WASH ADVISORS as well as liability with respect to trademark infringement and cybersquatting of one domain. Defendant's "affirmative defense" does not provide any basis for excusing its liability. Rather it is a dispute about what the underlying facts establish.

Defendant's fourth "Defendants owed no duty to Plaintiff" assertion is entirely irrelevant. There is no "duty" element to trademark infringement or cybersquatting. Whether Defendant owed Plaintiff a duty or not could not excuse its liability.

Finally, the parties prepared and filed extensive joint jury instructions. Defendants did not propose any jury instruction directed to any affirmative defense. Accordingly, Defendants should be barred from asserting any of its "affirmative defenses" at trial.

### V.     Conclusion

Defendants misrepresented the substance of testimony by late disclosed witnesses both in the pretrial order and at the pretrial conference. Its affidavits and its proposed witnesses of Goff and Blakey should be barred. This Court should further exclude the hearsay internet documents that have no foundation and lack authentication. This Court should also bar Defendant's introduction of USPTO records and any reference to Plaintiff's attempts to federally register its trademarks. The exhibits are irrelevant, and the substance of the exhibit is hearsay.

Dated: May 23, 2025                    Respectfully submitted,

                                        /s/ *Matthew De Preter*

11

ARONBERG GOLDGEHN
Matthew De Preter, *Pro Hac Vice*
Sofia Quezada Hastings, *Pro Hac Vice*
225 W. Washington St. Suite 2800
Chicago, IL 60606
312-755-3153
cdepreter@agdglaw.com
squezada@agdglaw.com

LISTON ABRAMSON LLP
Alex G. Patchen
Gina K. Kim
The Chrysler Building
405 Lexington Ave., 46th Floor
New York, NY 10174
Tel: 212-257-1630
Fax: 917-633-5568
Alex.patchen@listonabramson.com
Gina.kim@listonabramson.com

***Attorneys for Plaintiff***

12