# EXHIBIT 3

NAV4AMPC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

Amplify Car Wash Advisors LLC,

            Plaintiff,

      v.                                  22 Civ. 5612 (JGK)OTW

CAR WASH ADVISORY LLC ET AL,
                                          Conference

            Defendants.

------------------------------x
                                          New York, N.Y.
                                          October 31, 2023
                                          10:00 a.m.

Before:

                     HON. ONA T. WANG,

                                          Magistrate Judge

                       APPEARANCES

ARONBERG GOLDGEHN DAVIS & GARMISA
     Attorneys for Plaintiff
BY:  MATTHEW De PRETER


PARLATORE LAW GROUP
     Attorneys for Defendants
BY:  MARYAM HADDEN
```

NAV4AMPC

1  never identified as person with knowledge in the case. We only
2  had Mr. Caruso. But that's part of the reason why I wanted the
3  30(b)(6).
4      THE COURT: Sometimes it's the discovery process.
5  Look, I have seen motions for summary judgment in discovery
6  motions where suddenly a witness turns up or suddenly there's
7  another source of information and, you know, there's some back
8  and forth about whether they were initially disclosed and
9  whether somebody should be precluded. Preclusion in those
10 types of measures are, even if not called a sanction are a kind
11 of a sanction. And usually we give everybody at least one
12 chance to get it right and actually get the information and get
13 the case moving along. Because any diversion to something that
14 feels like sanctions takes time, it takes money, it takes
15 energy away from getting the case decided on the merits or
16 resolved in some other way. So I really like to not expand the
17 amount of discovery that we might need. As I understand it, we
18 got these newish document requests based on Mr. Caruso's
19 deposition. And then some further deposition, I'm not going to
20 rule anything out. But my expectation or hope would there
21 would be one deposition that would address the issues of --
22 where Mr. Caruso had a failure of knowledge in his own
23 deposition, whether that's Mr. Caruso being prepped better and
24 sitting for another deposition, whether it's a 30(b)(6) with
25 appropriate preparation or whether it's some other person who

NAV4AMPC

1  might be better suited in a better position to testify, is the
2  other issue.  But let's see what happens from that deposition
3  and if you get the answers that you need.
4      Why don't you meet and confer on that, and then file a
5  status letter on what you decided or what you propose to do on
6  December 1st.  OK.  So December 1, joint status letter on plan
7  for the remaining deposition.
8      All right.  Is that it as far as discovery?
9      MR. De PRETER:  There is one other issue from
10  plaintiff's side.  After the previously scheduled hearing, we
11  received a number of declarations on behalf of customers that
12  had never been identified previously.  The personnel providing
13  these declarations that have never been identified by
14  defendants and they purport to say, well, we as customers had
15  no knowledge of plaintiffs and the website part of what this
16  whole dispute is about, which is the use of our trademark in
17  defendant's websites.  So that took us a little bit by
18  surprise.  It was after close of discovery and here we get all
19  of a sudden now all of these depositions that purport --
20      THE COURT:  Declarations, you mean?
21      MR. De PRETER:  Excuse me.  Declaration.  Declarations
22  from these individuals that that are trying to backfill the
23  knowledge of defendants.
24      THE COURT:  OK.
25      MR. De PRETER:  To go through and have to now, at this

1   late stage, depose those people I think would be burdensome and
2   inappropriate.  If they had been identified earlier on in the
3   case, we would have taken discovery from them.  We had
4   initially issued subpoenas to some of the customers who we
5   believe might be involved, and those were all ignored.  To now
6   find specific individuals that were here to provide sworn
7   statements was a little bit surprising, to say the least.
8            THE COURT:  Ms. Hadden, what are your thoughts on
9   that?
10           MS. HADDEN:  As discovery was coming to a close my
11  client contacted me and asked whether or not it would be useful
12  for him to ask any of his customers how they came across his
13  website or came into contact with him.  I said that he
14  certainly could do that.  If he could do that, it would be most
15  useful if we could provide it to counsel in a clear, uniform
16  format.  He emailed them to me.  I emailed them to counsel.  It
17  was actually early in the morning of me being stuck in an
18  airport, and I was sending emails, and I neglected to say this
19  earlier, I apologize to the Court that I wasn't available on
20  the last date.  None of these individuals, obviously, are
21  employees of the defendants.  They are customers, who I believe
22  for most part the businesses were all listed on my client's
23  website as a successful transaction on behalf of Stevie's car
24  wash, I'm making up a name here, something along those lines.
25  So essentially it was my client doing his own research in an

1   effort to be overly helpful, which is of course not always
2   helpful.  There are certainly individuals who were in the
3   common realm in terms of being identified as customers of CWA
4   and they are publicly posted on the website as successful
5   transactions.  In essence, all this boils down to there never
6   was any traffic from the domain in question.  And one of the
7   reasons my client has, you know, continually gone back in an
8   efficient to settle, and I don't know whether or not a
9   settlement conference through the Court would be helpful or
10  not.  I don't know if the plaintiffs would be helpful for not.
11          Essentially, we are dealing with a case where there is
12  as best as anything if in the discovery from either side
13  revealed so far, there was no damage.  There were no customers
14  who came to the website through this link.  There was no
15  traffic through the link.  There was just no "there" there.  So
16  my client is flailing around trying to find other ways making
17  it clear that there was no "there" there.
18          THE COURT:  I think this might actually be a grounds
19  for an additional deposition of Mr. Caruso, what he did.  It
20  doesn't seem like it would be privileged other than if he asked
21  questions about helping to support traffic to the website, but
22  I think that's a fair area of inquiry.  And that might actually
23  lead to at least a short deposition of Mr. Caruso even if it
24  turns out that a deposition on the financial questions for the
25  corporate defendant is given by somebody else.  OK?

1            MS. HADDEN:  That's understood.
2            THE COURT:  Why don't you let me know the plan in the
3   December 1 letter.  I'm not foreclosing any request for relief
4   related to that because this does seem like something that if
5   it happened earlier and during the earlier time when discovery
6   was active and wide open, you know, I would have allowed
7   subpoenas to go out.  Now, I'm really trying to corral the
8   discovery and get it closed up so that we can move on to the
9   next stage.
10           OK.  All right.  Anything else we need to talk about
11  as far as discovery?
12           MS. HADDEN:  I don't believe so.
13           THE COURT:  I mean, I didn't see anything else on your
14  joint agenda?
15           MR. De PRETER:  The outside discovery goes a little
16  bit beyond some of the financials.  We communicated back and
17  forth about things outstanding.  If it's helpful for the meet
18  and confer to send a follow up letter, again, detailing what it
19  is we are looking for.  But there is no other specific issues.
20           THE COURT:  Why don't I set the discovery end date
21  right now to be December 22.  The reason why I'm setting
22  December 22 is my hope is you will have an agreed on a plan, on
23  a clear enough plan to tell me what it is in the December 1
24  letter as well as maybe scheduling a deposition or two to be
25  done by the 22nd.  I think that's a nice closure, nice time to

1    close discovery.  That said, if it turns out that more things
2    plop out or something else happens or something isn't actually
3    done well enough, I may consider if there's any disputes or
4    anything that needs to be cleaned up, I can consider after.
5    But my understanding, my hope is that by December 22, you'll at
6    least hopefully have done the remaining deposition or
7    depositions that need to be done, you'll have gotten remaining
8    the documents from the August doc requests to Mr. Caruso.  And
9    then we'll either be done, or we'll be close to done by the
10   22nd.  And when I say close to done by the 22, I mean you have
11   done everything you can to try to schedule the necessary
12   depositions before the 22nd but it's witnesses not available
13   that makes it difficult.  I don't want you to say just I don't
14   want to deal with this before Christmas or New Years and push
15   it to January.  That's not going to go.
16            Since I have a joint status letter coming from you on
17   December 1st, I think that should be enough for us to keep
18   track of the case.  I agree with you that dispositive
19   motions -- it would not be appropriate or right now to set a
20   schedule for dispositive motions.
21            And then we can after we conclude the public part of
22   this conference, I'm going to let the court reporter off.  We
23   will go off the record, and I'm going to have a private
24   settlement discussion with you to understand where and how the
25   settlement discussions broke down, and see if there's any