# EXHIBIT 4

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AMPLIFY CAR WASH ADVISORS LLC,

            Plaintiff,

       v.                                22 Civ. 5612 (JGK)(OTW)

CAR WASH ADVISORY LLC,
                                         Conference
            Defendant.
------------------------------x
                                         New York, N.Y.
                                         April 23, 2025
                                         11:30 a.m.
Before:

                    HON. ONA T. WANG,

                                         U.S. Magistrate Judge

                         APPEARANCES

MATTHEW De PRETER
     Attorney for Plaintiff

MARYAM HADDEN
     Attorney for Defendant
```

1   to testify.
2           THE COURT:  Okay.  And what do they do?  They work in
3   the transactional business or --
4           MS. HADDEN:  No.  Car wash owners who had sold car
5   wash chains.
6           THE COURT:  Yeah.
7           MR. De PRETER:  Plaintiffs object to the introduction
8   of either Bankey or Goff.  Neither of them were ever disclosed
9   on the defendant's rules or any 6(a) disclosures.
10          We had extended discovery because of some problems
11  with defendants providing financial documents.  We had a motion
12  to compel about that.  We ended up having a hearing, and the
13  day of the original hearing, there were some travel problems
14  and that hearing ended up getting canceled.  That same day, we
15  ended up getting these batch of affidavits, and then a few -- I
16  think two weeks later, we actually had a hearing.
17          MS. HADDEN:  Something like that.  I don't recall
18  exactly when --
19          THE COURT:  So, these were two witnesses who were
20  originally expected to testify in an evidentiary hearing?
21          MR. De PRETER:  No.  They were never disclosed, and
22  then thinker affidavits popped up, literally, right at the
23  close of discovery when we were having a dispute about
24  defendants' production of financial documents and needing
25  another deposition, a 30(b)(6) deposition, because Mr. Caruso

1   had some issues testifying about some of the finances and other
2   questions during his deposition.  So we discussed having a
3   30(b)(6) deposition with specific topics to clear up what
4   Mr. Caruso was unable to testify about, and the discovery was
5   closing, and at that time, these affidavits came out of the
6   woodwork.
7         MS. HADDEN:  And your Honor may or may not remember
8   the -- the hearing or conference that we had, whether it was
9   two weeks or three weeks or whatever it was after that initial
10  date.
11        But there was some discussion both about the fact that
12  the affidavits had -- basically, they were solicited -- not
13  solicited, but obtained by my client then given to me and I
14  turned them over to Mr. De Preter as soon as I received them.
15        And there was some discussion back and forth about
16  whether or not the discovery period would be extended further
17  for the purposes of investigating the signers of those
18  affidavits further.
19        Amplified decided to go forward with the 30(b)(6) but
20  didn't make my further application one way or the other
21  regarding the signers of the affidavits.
22        THE COURT:  All right.  And so your only objection is
23  that they weren't disclosed at --
24        MR. De PRETER:  They weren't disclosed originally.
25        THE COURT:  They were disclosed late.

1    MR. De PRETER: Extremely late, I think, is really the
2 issue.  Had we known earlier in the case that these people
3 existed and had relevant information, we could have pursued
4 discovery on them.
5    There were no communications, ever.
6    THE COURT: You didn't ask for discovery.  You didn't
7 ask for discovery about these once you learned their names; no?
8    MR. De PRETER: Literally, the discovery was closed.
9    THE COURT: Do you want some time to depose them?  You
10 are welcome.  I can give you a week.  Go depose them.
11    MR. De PRETER: Sure.
12    I think that this is part of the problem, because we
13 didn't get any communications.  We didn't get any production of
14 documents from everybody.
15    THE COURT: But you know what?  I think I had this
16 case for general pretrial.  What am I doing for general
17 pretrial?  I'm managing discovery.
18    If you thought that there was a need to get discovery
19 from these witnesses because you got this information too
20 late, I never heard the request.  So, maybe it wasn't that
21 important to you.  And now, on the eve of trial, you want to
22 block a witness who may have relevant information about the
23 existence or nonexistence of damages.
24    MR. De PRETER: We raised this issue during the
25 discovery conference with your Honor in December -- or, excuse

Case 1:22-cv-05612-JGK-OTW   Document 109-4   Filed 05/23/25   Page 6 of 9   21
P4nFampC

1    me -- in October; it was October 31, 2023.
2            THE COURT:  2023.
3            MR. De PRETER:  And at that time --
4            THE COURT:  At that time, I probably said something
5    like:  Well, you can probably question them live if it goes to
6    trial.
7            MR. De PRETER:  Just a minute, your Honor.
8            THE COURT:  That wouldn't surprise me, knowing how I
9    try to problem solve during discovery conferences.
10           MR. De PRETER:  It was -- they were for closing relief
11   related to our request to bar the witnesses.  Because it -- you
12   said:  This does seem like something that if it had happened
13   earlier and during the earlier time when discovery was active
14   and wide open, I would have allowed the subpoenas to go out.
15   Now, I'm really trying to corral discovery and get it closed so
16   that we can move on to the next stage.
17           So that was where we were, in October of '23, with
18   plaintiffs objecting to the late disclosure of the individuals
19   and their affidavits.
20           THE COURT:  You might want to see if you can get that
21   transcript, because I see that it was raised.  At that time, I
22   did move the fact discovery end date to December 22.
23           MR. De PRETER:  Correct.
24           That was for the deposition of our 30(b)(6) witness.
25           THE COURT:  Okay.  I did also want you to address in a

          SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

1  joint status letter: Meet and confer on a plan for remaining
2  deposition, which I think was a 30(b)(6).
3           MR. De PRETER: Correct, your Honor.
4           THE COURT: But there was no 30(b)(6) notice at that
5  time. And then I also asked you, I think, to discuss in that
6  joint status letter how you planned to address issues where, I
7  guess Mr. Caruso's deposition was unclear.
8           Like, do these two witnesses relate to that?
9           MR. De PRETER: No, your Honor.
10          MS. HADDEN: No.
11          THE COURT: I mean, the question still becomes -- it's
12 possible that I was trying to corral discovery at that point,
13 and I think it was also really trying to settle this case.
14          But these guys -- you know, even with Judge
15 Koeltl, you're on 48-hours notice as of June 6, which means
16 that you still have some time to get these depositions for
17 these two witnesses, because you're objecting to them
18 testifying at trial. Then, you have until a week from Friday
19 to depose them.
20          MR. De PRETER: Does that include obtaining documents
21 from them between Mr. Caruso and communications between
22 Mr. Caruso and these witnesses?
23          THE COURT: Why don't you ask them at deposition.
24          MR. De PRETER: Okay.
25          THE COURT: You're on the eve of trial. I can't

1  believe I'm telling you how to litigate your case.  You can't
2  do this.
3           Okay.  So, May 2, depose Bankey and Goff.  If you're
4  not able to depose them by then, I think they should be allowed
5  to testify anyway.  You can take it up with Judge Koeltl if you
6  want to, closer to trial, but I don't think they should be
7  precluded, because plaintiff has been on notice of these
8  individuals for a year and a half now.  All right?
9           And you're getting an opportunity to get some fuller
10 discovery from them.  If that doesn't work, you can cross them.
11          How long would those examinations take, estimated?
12          MS. HADDEN:  30 minutes.
13          THE COURT:  Okay.  So no more than one hour each.
14          MS. HADDEN:  No; I wouldn't think so.
15          THE COURT:  Okay.  Jeff Pavone is also deposition
16 designations.  Who is he?
17          MS. HADDEN:  He was the other founder of plaintiff.
18          THE COURT:  Other founder of plaintiff?
19          MS. HADDEN:  Yes.
20          Jeff pavone and Bill Martin founded plaintiff
21 together.
22          THE COURT:  Okay.  Talk to me why Pavone is listed as
23 your witness.
24          MS. HADDEN:  There are certain statements in his
25 deposition testimony that he would have been -- or the

1   defendant wish to bring before the jury.
2           THE COURT:  Okay.  Is he also elderly, like
3   Mr. Martin?
4           MR. De PRETER:  No; he's, I think, mid 60s, maybe.
5           MS. HADDEN:  60s, maybe.
6           THE COURT:  But you both agree you can do it by
7   designations, depo designations and counter-designations?
8           MR. De PRETER:  Plaintiff agrees.
9           MS. HADDEN:  Yes.
10          THE COURT:  And then the last issue is Mr. Martin.
11          Okay.  All right.  On to exhibits.  Why all the
12  objections?  Are we objecting on admissibility, or are we
13  objecting on something else?
14          MR. De PRETER:  Should we take plaintiff's exhibits
15  first, or defendant's exhibits?
16          THE COURT:  I'm asking a very general question because
17  I have not seen --
18          MR. De PRETER:  So --
19          THE COURT:  I have not seen an exhibit list that has
20  so much dispute.
21          MR. De PRETER:  For defendant's exhibits, defendant
22  wants to introduce some Google pages, and we object, because
23  the Google pages, themselves, there's no one to testify.  No
24  one has personal knowledge of how those were created or how the
25  tools were or what the data is that they collect or what the