# EXHIBIT 6

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
AMPLIFY CAR WASH ADVISORS LLC,

                              Plaintiff,

         -against-         Case No.:
                           22-cv-5612
CAR WASH ADVISORY LLC and HARRY CARUSO,
                              Defendants.
-----------------------------------------X

                  DATE: May 2, 2025
                  TIME: 9:22 a.m. (EST)


         DEPOSITION of JEFF BANKEY, taken by the respective parties, pursuant to a Notice, held via Zoom, before Nicole Veltri, RPR, CRR, a Notary Public of the State of New York.

```
 1
 2   A P P E A R A N C E S:
 3
 4   ARONGBERG GOLDGEHN DAVIS & GARMISA
        Attorneys for the Plaintiff
 5      225 W. Washington Street, Suite 2800
        Chicago, Illinois 60606
 6      BY: MATTHEW DE PRETER, ESQ.
 7
 8
     PARLATORE LAW GROUP
 9      Attorneys for the Defendants
        260 Madison Avenue, 17th Floor
10      New York, New York 10016
        BY: MARYAM N. HADDEN, ESQ.
11
12
13
14
                  *         *         *
15
16
17
18
19
20
21
22
23
24
25
```

```
                                              Page 21
 1                     J. BANKEY
 2    minute here.
 3         A.    Where are you located?
 4         Q.    Just a minute.
 5         A.    I see that you're in a
 6    skyscraper looking out your window so I
 7    figure you're in the city.
 8         Q.    Just a minute, Mr. Bankey.
 9    Mr. Bankey, please go to the exhibits
10    folder, the Exhibit Share and you should
11    see an Exhibit 22.
12               (Whereupon, Plaintiff's Exhibit
13          22 Joint Pretrial Order was marked
14            for identification as of this date.)
15         Q.    I'm going to introduce an
16    Exhibit 22 a document that is identified as
17    Docket Entry 92.
18         A.    Exhibit 22.  I got to find
19    that.
20         Q.    It should be in your Exhibit
21    Share folder.  You may have to refresh your
22    browser.
23         A.    Go back?
24         Q.    Yes.
25         A.    Okay.  I've got it.
```

Page 22

1           J. BANKEY
2      Q.   Feel free to scroll through
3 this a little bit.  I'm only going to ask
4 you about page six.
5           Have you ever seen this
6 document before?
7           MS. HADDEN:  Objection.
8      Q.   So I'll clarify.  Have you ever
9 seen the document marked as Exhibit 22
10 before?
11     A.   No.
12     Q.   Can you scroll down, you see
13 page six, Mr. Bankey?
14     A.   Yes.  I see page six.
15     Q.   And on page six you'll see that
16 it says Jeff Bankey parenthesis live,
17 correct?
18     A.   Yeah.  I see that.
19     Q.   Have you ever spoken to
20 Ms. Hadden prior to March or April 16th,
21 2025, about testifying live in this
22 litigation in?
23     A.   I can't answer that.  I just --
24 I do not believe I've ever spoke with her
25 but that -- I -- it's possible that I have

1  J. BANKEY
2  and I don't remember it.
3      Q.   Do you recall having any
4  agreement with Ms. Hadden, Mr. Caruso, or
5  Car Wash Advisory about testifying live in
6  a trial during this litigation?
7           MS. HADDEN:  Objection.
8      Q.   You can answer or do you need
9  me to repeat the question, Mr. Bankey?
10     A.   Repeat the question.
11     Q.   Sure.  Do you recall having any
12 conversations with either Ms. Hadden, Car
13 Wash Advisory, or Harry Caruso in which you
14 agreed to testify live at trial in this
15 litigation?
16     A.   I can't honestly answer that
17 question because I don't have a number -- a
18 memory of that.
19     Q.   As you sit here today, do you
20 believe that you have agreed to testify
21 live at trial in this litigation?
22     A.   As of yesterday, I did.
23     Q.   Okay.  So I want to be clear
24 that I'm not talking about this deposition,
25 I'm asking about in the future at trial in

Page 24

1        J. BANKEY
2   New York live, do you have any recollection
3   of agreeing to testify live at trial in New
4   York in this litigation?
5        A.   No.
6        Q.   Do you have any recollection of
7   discussing testifying live at trial in New
8   York in this litigation with Ms. Hadden?
9        A.   No.
10       Q.   Do you have any recollection of
11  agreeing to testify live at trial in New
12  York in this litigation with Mr. Caruso or
13  anyone on behalf of Car Wash Advisory?
14       A.   No.
15       Q.   You see on Exhibit 22 where it
16  says under Jeff Bankey parenthesis live,
17  defendants expect that Mr. Bankey will
18  testify consistently with his affidavit
19  that he did not find CWA through my, quote,
20  Amplify, close quote, hyphen related domain
21  name.
22            Do you see that?
23       A.   Yeah.  I went through it as you
24  read it.
25       Q.   Do you recall providing an

Page 25

1         J. BANKEY
2    affidavit in this litigation?
3        A.   No.
4        Q.   Do you have any idea what that
5    paragraph about testifying consistently
6    with your affidavit would refer to?
7        A.   No, not -- I have not -- repeat
8    that question one more time.
9        Q.   Sure.  In reference to this
10   paragraph here where it discusses his
11   affidavit referring to you, do you have any
12   idea what the affidavit referred to in
13   that -- scratch that.  Let me start over.
14            Did you see where it says
15   Mr. Bankey will testify consistently with
16   his affidavit in Exhibit 22, right?
17       A.   Correct.
18       Q.   Do you have any idea what the
19   contents of that affidavit that's referred
20   to in that paragraph would be?
21       A.   No.  Other than I was -- I
22   heard something about a lawsuit way back
23   and I am not -- like I said, I'm out of car
24   wash circles.  I can't answer that because
25   I can't give you an honest answer.

Page 26

1                    J. BANKEY
2        Q.    Sure.  And at any rate, you
3   don't recall signing an affidavit in this
4   litigation?
5        A.    No.  No.  But I could have and
6   not remember it.
7        Q.    I understand.  Let's mark --
8   actually, scratch that.
9              Do you have any aliases or
10  other names that you might be known by?
11       A.    No, no.
12       Q.    For example, my legal name is
13  Matthew De Preter, but I go by Chip De
14  Preter.
15             Do you understand a nickname
16  versus a legal name?  You understand that
17  concept, right?
18       A.    Yes.
19       Q.    And do you have any nicknames
20  or other names that you might go by besides
21  Jeff Bankey?
22       A.    A lot of people call me Car
23  Wash.
24       Q.    Would you sign legal documents
25  with that nickname?

Page 27

1       J. BANKEY
2       A.    No, no.
3       Q.    What name would you use if you
4  were signing something official?
5       A.    Jeff Bankey.
6       Q.    Okay.  Bear with me a minute.
7  I'm going to look for another exhibit.  I'm
8  going to introduce as Exhibit 23 an email
9  dated October 11th, 2023, from Maryam
10 Hadden to Chip De Preter and others.
11             (Whereupon, Plaintiff's Exhibit
12         23 Hadden email dated October 11,
13         2023, was marked for identification
14         as of this date.)
15      Q.    If you could, Mr. Bankey,
16 please go back to the exhibits folder in
17 the Exhibit Share and look for Exhibit 23.
18      A.    I have it up already.
19      Q.    Okay.  If you want to, you can
20 scroll through this; and my first question
21 just is, have you ever seen Exhibit 23
22 before?
23      A.    Not that I'm aware of.
24      Q.    I would like you to scroll
25 down, let's look at page two for a minute.

```
                                              Page 28
 1                  J. BANKEY
 2           Do you have page two?
 3       A.   I'm on page two right now.
 4       Q.   All right.  And you see that it
 5   has the top portion says United States
 6   District Court, Southern District of New
 7   York, and then Amplify Car Wash Advisors
 8   versus -- or excuse me, Car Wash Advisory
 9   and Harry Caruso.  You see that at the top?
10       A.   Yes.
11       Q.   Have you ever seen or do you
12   recall -- strike that.
13           Do you recall seeing a document
14   that looks similar to this one in the past?
15       A.   I've never seen it.  I've never
16   seen anything like this before.  I -- I
17   can't even know Amplify Car Wash was out
18   there.
19       Q.   All right.  You don't recall
20   ever being asked to sign a document similar
21   to what's shown on page two?
22       A.   No.
23           MS. HADDEN:  Ordinarily I
24        wouldn't interject at this point but
25        I should let you know that in a
```

```
                                            Page 29
 1                J. BANKEY
 2        paragraph in joint trial order the
 3        reference to an affidavit is my error
 4        so Mr. Bankey did not sign an
 5        affidavit.
 6            MR. DE PRETER:  Okay.  That's
 7        what I was trying to get at.
 8            MS. HADDEN:  That was
 9        completely my mistake, and I
10        apologize for interrupting; but I
11        didn't want to be wasting your time
12        trying further to find something that
13        isn't out there.
14            MR. DE PRETER:  Okay.
15        Q.    Okay.  Then we can take down
16   Exhibit 23.  Mark as Exhibit 24.
17            (Whereupon, Plaintiff's Exhibit
18        24 document Bates stamped
19        CWA000493-565 was marked for
20        identification as of this date.)
21        A.    You want me to go to a new
22   exhibit now?
23        Q.    Yes.  Just one minute while I
24   get the exhibit up.  Okay.  Mr. Bankey,
25   would you please go to the Exhibit Share
```

Page 30

```
 1                  J. BANKEY
 2   folder and look for Exhibit 24 and let me
 3   know when you've had that available.
 4        A.    I've got it available.
 5        Q.    Okay.  Do you recognize
 6   Exhibit 24?
 7        A.    I mean, it refreshes my mind.
 8   That was a company I sold and the buyer of
 9   the car washes.
10        Q.    Great.  And does this refresh
11   your recollection that the purchase of the
12   Russ Auto Car Wash was approximately
13   May 6th of 2021?
14        A.    The date of the agreement or
15   the date of the actual physical sale?
16        Q.    Well, let's take a step back, I
17   guess.
18              What is the purpose of this
19   agreement, Exhibit 24?
20        A.    Get involved moving to sell the
21   car washes to my understanding.
22        Q.    So the 6th of May -- excuse me,
23   let me start over.  The date at the top of
24   the agreement, May 6th, 2021, that was not
25   the sale date.  Is that correct?
```