# EXHIBIT D

NAV4AMPC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   Amplify Car Wash Advisors LLC,

4                 Plaintiff,

5            v.                          22 Civ. 5612 (JGK)OTW

6   CAR WASH ADVISORY LLC ET AL,
                                         Conference
7
                  Defendants.
8
    ------------------------------x
9                                        New York, N.Y.
10                                       October 31, 2023
                                         10:00 a.m.
11  Before:

12                        HON. ONA T. WANG,

13                                       Magistrate Judge

14                        APPEARANCES

15  ARONBERG GOLDGEHN DAVIS & GARMISA
         Attorneys for Plaintiff
16  BY:  MATTHEW De PRETER

17

18  PARLATORE LAW GROUP
         Attorneys for Defendants
19  BY:  MARYAM HADDEN

20

21

22

23

24

25

NAV4AMPC

1    (Case called)

2    THE COURT:  Please be seated.

3    MR. De PRETER:  Good morning, your Honor.  Matthew De

4    Preter on behalf of the plaintiffs.

5    MS. HADDEN:  Good morning, your Honor.  Maryam Hadden

6    Parlatore Law Group on behalf of the defendants.

7    THE COURT:  All right.  Good morning.

8    We are here for a status conference.  I have your

9    joint agenda.  So the first issue I have on your document

10   request to Mr. Caruso.  Have you gotten the documents that you

11   have requested?  Is that issue right?

12   MR. De PRETER:  No, your Honor.  We haven't gotten any

13   of the documents.  Should I stand at the podium or the table?

14   What do you prefer?

15   THE COURT:  What's that?

16   You don't need to use your podium.  You can also stay

17   seated if you want to.

18   MR. De PRETER:  Thank you.

19   No, we haven't gotten any of the documents.  We've

20   requested them.  It's been months since we have gotten

21   anything.  We had a deposition of Mr. Caruso.  He testified

22   that there were a number of documents that existed that weren't

23   searched for that would be produced.  We served another set of

24   document requests in August and didn't get any responses or

25   objections.  There was no response at all to those document

NAV4AMPC

1    questions.  There are a number of things that are outstanding,

2    particularly tax records, engagements agreements, closing

3    documents, something called Bright Born documents that all

4    relate to finances, email communications among the team

5    respecting the domains that are at issue that weren't produced,

6    that weren't even searched for.  We requested an update on the

7    P&L statement during the deposition of Mr. Caruso.  He

8    testified that the P&L that was provided in this case wasn't

9    accurate.  He didn't feel comfortable testifying to the

10   accuracy and guaranteed that some of the numbers were wrong.

11   So the issue of the outstanding discovery remains,

12   unfortunately.

13           THE COURT:  OK.  So as far as document discovery

14   though, is this the last piece of outstanding document

15   discovery?

16           MR. De PRETER:  That's correct.  This is the only

17   thing we are interested in.

18           THE COURT:  All right.  Should I set a date for them

19   to be provided, or is there any other explanation why these

20   documents haven't been provided?

21           MS. HADDEN:  There was some that there were objections

22   to.  There was some back and forth between myself and Mr. De

23   Preter's cocounsel.  Although I believe everybody was copied on

24   the chains.  A decent chunk of the delay is due to us being in

25   settlement negotiations, which fell through.  But there was a

NAV4AMPC

1    period of time where that was where both my focus and my

2    client's focus was.  So I have put him back on the task of

3    getting those documents.  Other than there are a couple of

4    items where -- for example, the Bright Born securities

5    documents are not documents that would be within our

6    possession, they would be within Bright Born's possession.  And

7    I believe there is one other category of documents at least

8    that is something that would involve a decent amount of back

9    and forth in terms of either redactions or discussion with

10   counsel because there are confidentiality agreements in place

11   with those clients.  So obviously we're still in that process.

12         THE COURT:  OK.  When can you get responses and

13   objections to plaintiff's counsel?

14         MS. HADDEN:  I would think by the end of the week

15   because I've been going back and forth with my client with it

16   over the last couple weeks.

17         THE COURT:  So responses and objections are due

18   November 3rd.  When can document production be done then?

19         MS. HADDEN:  If I could have one week past that, your

20   Honor.  I don't think that would be an issue.  There is one

21   other category, the communications category, where my client

22   said there would be hundreds of thousands of pages.  So I need

23   to narrow that down with him.

24         THE COURT:  Look, as characterized by plaintiff's

25   counsel, some of these things sound like they should have been

1  searched for at the outset of the case and preserved.  If we

2  have a preservation issue I want to hear about it.

3          All right.  How about documents produced November 17.

4          MS. HADDEN:  That's fine.  Thank you.

5          And I would disagree with some of the

6  characterizations.  But --

7          THE COURT:  OK.  As to the 30(b)(6) of Car Wash

8  Advisory, is this a sole proprietorship?  Why would you need

9  30(b)(6)?  Why couldn't you just have an agreement that

10 Mr. Caruso's answers would be binding on the corporation?

11         MR. De PRETER:  The reason why I requested a 30(b)(6)

12 Is because last time I had a deposition and I tried to go

13 through the finances of the company Mr. Caruso said that he

14 didn't know anything about them even though he was the one

15 person that is in control of the finances of the company.  So

16 when I tried to go through the different portions of where he

17 got distributions from, he didn't know how much that he

18 received in distributions.  He didn't know the accuracy of the

19 P&L documents.  He said I can't testify to the accuracy.  So I

20 wanted a 30(b)(6).

21         THE COURT:  Are there other depositions that need to

22 be done, or are in the process?  Or are you basically done with

23 depositions other than this issue with Mr. Caruso?

24         MS. HADDEN:  I believe we are done with depositions.

25 Frankly, if there is going to be a 30(b)(6) of my corporate

NAV4AMPC

1  client, I would like to take a 30(b)(6) of their corporate

2  client.  One of the reasons I didn't take a 30(b)(6) was

3  because no 30(b)(6) was noticed.  Mr. Caruso was deposed back

4  in --

5          THE COURT:  OK.  Let's back up.  So you would want a

6  30(b)(6) of plaintiff because plaintiff wants a 30(b)(6) of

7  defendants?  I mean, that's not really how procedure and how

8  depositions work.  What's the basis for taking a 30(b)(6)?  I

9  understand from plaintiff's counsel, that the reason for a

10  30(b)(6) was because Mr. Caruso's deposition was unclear.  You

11  have two options, I think.  One would be you get a 30(b)(6)

12  with notice and topics and maybe that's not right.

13          But the other issue is you could say, you know,

14  whether if Mr. Caruso isn't the person then you would get

15  another person who can testify to those answers or Mr. Caruso

16  gets deposed for an additional period of time on particular

17  topics.

18          MS. HADDEN:  Honestly, your Honor, that may be what

19  part of the issue is.  Because there was no 30(b)(6) with

20  notice and with topics, Mr. Caruso wasn't prepared to testify

21  as to at least some of the questions he was being asked.  So

22  without a list of topics it's hard for me to see either if he

23  would be the correct person to be deposed and it would be an

24  extension of the deposition in essence, or if his accountant

25  should be deposed or if there should be two designees on behalf

1    of the corporation.  It was just never noticed.

2              THE COURT:  OK.  For answers that Mr. Caruso gave --

3    and I'm proposing this as a way to narrow a potential 30(b)(6)

4    or narrow a potential subsequent deposition -- are defendants

5    willing to agree that for answers that Mr. Caruso gave that

6    they would buy the corporation?

7              MS. HADDEN:  My only concern, your Honor, is that

8    there were answers where he simply didn't know because he

9    didn't have the paperwork.

10             THE COURT:  That's not what I'm talking about.

11             I'm talking about, you know, if Mr. Caruso, for

12   example, testified to a conversation or a business decision

13   where he said, I made the decision or the company and I made

14   the decision or I made the decision on behalf of the company

15   that XYZ would happen.  And this meeting happened on whatever

16   date or there was a meeting and I don't remember the date, that

17   the company wouldn't come back and say that there would be

18   somebody else to say there was no meeting.

19             MS. HADDEN:  Certainly.  To that extent, yes, your

20   Honor, I have no issue with that.

21             THE COURT:  All right.

22             How do you propose we proceed, Mr. De Preter?

23             MR. De PRETER:  I would just ask by November 3rd we

24   get the answers to the discovery.  I guess it's really going to

25   be November 17.  I think at this point, objections to the

1    discovery that we served would be improper.  They didn't

2    provide any objections to the --

3              THE COURT:  I already gave them a date to provide

4    them.

5              MR. De PRETER:  Fair enough.

6              THE COURT:  Look, the rules of civil procedure are

7    there to keep cases moving.  I understand that this discovery

8    has been outstanding for a while.  I also heard from Ms. Hadden

9    that, you know, you may have diverted your energies and your

10   efforts to talk about settlement.  So I gave them a new date

11   for the objections and objections.  I'm not going to foreclose

12   them altogether.

13             MR. De PRETER:  Understood.

14             THE COURT:  That said, if they are not meaningful and

15   they're not helpful, if responsive documents aren't produced in

16   short order, then we will have another conference and there

17   will be other orders that we will issue.

18             I want to go back to this issue because it sounds like

19   there's this remaining issue of these documents, and then

20   possibly another deposition, and we're not sure whether it's

21   going to be a 30(b)(6) or a deposition of Mr. Caruso.  I'm

22   going to encourage you courage you to meet and confer and come

23   one a plan.  Certainly, I could see it in both your interests

24   to simplify things and not have to go through the 30(b)(6)

25   notice and topics process.  That said, I think it's in

NAV4AMPC

1    plaintiff's interest to get a meaningful deposition by at least
2    going through and in your meet and confer process going through
3    with defense counsel and letting them know what it is that you
4    are expecting or needing answers to.  And then have a
5    conversation whether it ought to be a 30(b)(6) or whether it
6    ought to be a continued deposition of Mr. Caruso.  I'm probably
7    not going to let you have both.  Unless there's some showing of
8    shenanigans.  OK.  I don't expect there to be shenanigans.
9    That's where I'm heading one more deposition to try to get the
10   answers for which, you know, Mr. Caruso testified he didn't
11   know or he wasn't prepared to do.

12        Now, keep in mind though, that sometimes it may be,
13   and this happens with 30(b)(6) deposition as well, it may be
14   that the entity's answer is now I don't know because there is
15   no way to go back be find that answer.  If so whatever form
16   that deposition takes, let's make clear that the "I don't
17   know," is going to be the I don't know answer it's not because
18   somebody wasn't sufficiently prepared.

19        If it turns out that all of the stuff is financial and
20   accounting related, it may be better to get a deposition of the
21   accountant with the appropriate documents that you could get by
22   the 17th of November.

23        OK.  How does that sound?

24        MR. De PRETER:  That sounds good for plaintiffs.  I
25   think it would be strange if it was the accountant.  They were

1    never identified as person with knowledge in the case.  We only

2    had Mr. Caruso.  But that's part of the reason why I wanted the

3    30(b)(6).

4            THE COURT:  Sometimes it's the discovery process.

5    Look, I have seen motions for summary judgment in discovery

6    motions where suddenly a witness turns up or suddenly there's

7    another source of information and, you know, there's some back

8    and forth about whether they were initially disclosed and

9    whether somebody should be precluded.  Preclusion in those

10   types of measures are, even if not called a sanction are a kind

11   of a sanction.  And usually we give everybody at least one

12   chance to get it right and actually get the information and get

13   the case moving along.  Because any diversion to something that

14   feels like sanctions takes time, it takes money, it takes

15   energy away from getting the case decided on the merits or

16   resolved in some other way.  So I really like to not expand the

17   amount of discovery that we might need.  As I understand it, we

18   got these newish document requests based on Mr. Caruso's

19   deposition.  And then some further deposition, I'm not going to

20   rule anything out.  But my expectation or hope would there

21   would be one deposition that would address the issues of --

22   where Mr. Caruso had a failure of knowledge in his own

23   deposition, whether that's Mr. Caruso being prepped better and

24   sitting for another deposition, whether it's a 30(b)(6) with

25   appropriate preparation or whether it's some other person who

1   might be better suited in a better position to testify, is the

2   other issue.  But let's see what happens from that deposition

3   and if you get the answers that you need.

4          Why don't you meet and confer on that, and then file a

5   status letter on what you decided or what you propose to do on

6   December 1st.  OK.  So December 1, joint status letter on plan

7   for the remaining deposition.

8          All right.  Is that it as far as discovery?

9          MR. De PRETER:  There is one other issue from

10  plaintiff's side.  After the previously scheduled hearing, we

11  received a number of declarations on behalf of customers that

12  had never been identified previously.  The personnel providing

13  these declarations that have never been identified by

14  defendants and they purport to say, well, we as customers had

15  no knowledge of plaintiffs and the website part of what this

16  whole dispute is about, which is the use of our trademark in

17  defendant's websites.  So that took us a little bit by

18  surprise.  It was after close of discovery and here we get all

19  of a sudden now all of these depositions that purport --

20         THE COURT:  Declarations, you mean?

21         MR. De PRETER:  Excuse me.  Declaration.  Declarations

22  from these individuals that that are trying to backfill the

23  knowledge of defendants.

24         THE COURT:  OK.

25         MR. De PRETER:  To go through and have to now, at this

NAV4AMPC

```
1    late stage, depose those people I think would be burdensome and
2    inappropriate.  If they had been identified earlier on in the
3    case, we would have taken discovery from them.  We had
4    initially issued subpoenas to some of the customers who we
5    believe might be involved, and those were all ignored.  To now
6    find specific individuals that were here to provide sworn
7    statements was a little bit surprising, to say the least.
8              THE COURT:  Ms. Hadden, what are your thoughts on
9    that?
10             MS. HADDEN:  As discovery was coming to a close my
11   client contacted me and asked whether or not it would be useful
12   for him to ask any of his customers how they came across his
13   website or came into contact with him.  I said that he
14   certainly could do that.  If he could do that, it would be most
15   useful if we could provide it to counsel in a clear, uniform
16   format.  He emailed them to me.  I emailed them to counsel.  It
17   was actually early in the morning of me being stuck in an
18   airport, and I was sending emails, and I neglected to say this
19   earlier, I apologize to the Court that I wasn't available on
20   the last date.  None of these individuals, obviously, are
21   employees of the defendants.  They are customers, who I believe
22   for most part the businesses were all listed on my client's
23   website as a successful transaction on behalf of Stevie's car
24   wash, I'm making up a name here, something along those lines.
25   So essentially it was my client doing his own research in an
```

1    effort to be overly helpful, which is of course not always

2    helpful.  There are certainly individuals who were in the

3    common realm in terms of being identified as customers of CWA

4    and they are publicly posted on the website as successful

5    transactions.  In essence, all this boils down to there never

6    was any traffic from the domain in question.  And one of the

7    reasons my client has, you know, continually gone back in an

8    efficient to settle, and I don't know whether or not a

9    settlement conference through the Court would be helpful or

10   not.  I don't know if the plaintiffs would be helpful for not.

11           Essentially, we are dealing with a case where there is

12   as best as anything if in the discovery from either side

13   revealed so far, there was no damage.  There were no customers

14   who came to the website through this link.  There was no

15   traffic through the link.  There was just no "there" there.  So

16   my client is flailing around trying to find other ways making

17   it clear that there was no "there" there.

18           THE COURT:  I think this might actually be a grounds

19   for an additional deposition of Mr. Caruso, what he did.  It

20   doesn't seem like it would be privileged other than if he asked

21   questions about helping to support traffic to the website, but

22   I think that's a fair area of inquiry.  And that might actually

23   lead to at least a short deposition of Mr. Caruso even if it

24   turns out that a deposition on the financial questions for the

25   corporate defendant is given by somebody else.  OK?

1      MS. HADDEN:  That's understood.

2      THE COURT:  Why don't you let me know the plan in the

3  December 1 letter.  I'm not foreclosing any request for relief

4  related to that because this does seem like something that if

5  it happened earlier and during the earlier time when discovery

6  was active and wide open, you know, I would have allowed

7  subpoenas to go out.  Now, I'm really trying to corral the

8  discovery and get it closed up so that we can move on to the

9  next stage.

10      OK.  All right.  Anything else we need to talk about

11 as far as discovery?

12      MS. HADDEN:  I don't believe so.

13      THE COURT:  I mean, I didn't see anything else on your

14 joint agenda?

15      MR. De PRETER:  The outside discovery goes a little

16 bit beyond some of the financials.  We communicated back and

17 forth about things outstanding.  If it's helpful for the meet

18 and confer to send a follow up letter, again, detailing what it

19 is we are looking for.  But there is no other specific issues.

20      THE COURT:  Why don't I set the discovery end date

21 right now to be December 22.  The reason why I'm setting

22 December 22 is my hope is you will have an agreed on a plan, on

23 a clear enough plan to tell me what it is in the December 1

24 letter as well as maybe scheduling a deposition or two to be

25 done by the 22nd.  I think that's a nice closure, nice time to

NAV4AMPC

1  close discovery.  That said, if it turns out that more things

2  plop out or something else happens or something isn't actually

3  done well enough, I may consider if there's any disputes or

4  anything that needs to be cleaned up, I can consider after.

5  But my understanding, my hope is that by December 22, you'll at

6  least hopefully have done the remaining deposition or

7  depositions that need to be done, you'll have gotten remaining

8  the documents from the August doc requests to Mr. Caruso.  And

9  then we'll either be done, or we'll be close to done by the

10  22nd.  And when I say close to done by the 22, I mean you have

11  done everything you can to try to schedule the necessary

12  depositions before the 22nd but it's witnesses not available

13  that makes it difficult.  I don't want you to say just I don't

14  want to deal with this before Christmas or New Years and push

15  it to January.  That's not going to go.

16       Since I have a joint status letter coming from you on

17  December 1st, I think that should be enough for us to keep

18  track of the case.  I agree with you that dispositive

19  motions -- it would not be appropriate or right now to set a

20  schedule for dispositive motions.

21       And then we can after we conclude the public part of

22  this conference, I'm going to let the court reporter off.  We

23  will go off the record, and I'm going to have a private

24  settlement discussion with you to understand where and how the

25  settlement discussions broke down, and see if there's any

1   window to try to resolve the case.

2           MR. De PRETER:  Yes, your Honor.  Just to be clear,

3   there is August discovery and some of the other discovery

4   requests were just supplements of discovery that we served

5   earlier.  The documents would fall underneath some of the

6   things that Mr. Caruso has said.  I can get those for you.

7   They can technically be a supplement to our previous discovery

8   request.

9           THE COURT:  I'm not sure I understand.

10          MR. De PRETER:  So we served discovery.  Discovery was

11  provided.  We got to the deposition.  Some of the things he

12  testified existed would be within the discovery request being

13  filed previously.

14          THE COURT:  You also served supplemental ones?

15          MR. De PRETER:  And then we served an additional set

16  in August.

17          THE COURT:  I understand.  All of those documents

18  should be produced unless there's some real problem that hasn't

19  come up yet.  They should be produced by the 17th.

20          MR. De PRETER:  OK.  Thank you.

21          THE COURT:  All right.  Anything else we need to do on

22  the record at this time?

23          MR. De PRETER:  Not from plaintiffs.

24          MS. HADDEN:  Not from the defendants.

25          THE COURT:  All right.  Thank you very much.  We are

NAV4AMPC

1    adjourned.  I'm going to request that you order a copy of the

2    transcript and share the costs 50/50.  I'm going to step off

3    the bench now.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25